_FILED
_RECEIVED        _LODGED
                 _COPY

MAR 1 0 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

AUGUSTO J MARTINEZ,                      )
  Complainant,                        )
        v.                       )
                    )
ALEJANDRO MAYORKAS,                      )
U.S . Department of Homeland Security,   )
Transportation Security Administration,  )
    Agency,                          )
_____)

No. **CV23-00429-PHX-DMF**

Dated: March 10, 2023

---

### COMPLAINT ABOUT DISCRIMINATION

---

1. This is an employment discrimination action brought by Augusto J Martinez to recover damages against the Transportation Security Administration for the violation of the rights title VII of the 1964 Civil rights act 42 U.S.C. §2000e *et. seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 *et. seq.* ("ADEA").

### JURISDICTION AND VENUE

2. Jurisdiction over Mr. Martinez claim is conferred by 42 U.S.C. §2000e-5(f)(3). Jurisdiction over ADEA claims is conferred by 29 U.S.C. §626.

3. The venue is proper in this district pursuant to the general venue statute 28 U.S.C. §1391, and under Title VII special venue statute 42 U.S.C. §2000e-5(f)(3).

PARTIES

4. Augusto J Martinez, Plaintiff mailing address  at 3104 E Camelback Rd, 2534 Phoenix AZ 85016

5. Transportation Security Administration(TSA), Defendant office is located at 410 N 44th St, Phoenix, Maricopa  County AZ 85008.

6. At all times TSA has conducted operations in this judicial district.

7. At all times TSA has been an employer subjected under VII and the ADEA.

ALLEGATIONS

7. Mr Martinez was fired after the following incident. On June 6, 2021  Mr Martinez was on duty at Sky Harbor Airport, checkpoint A, he was on a rotation in different stations, at 8:00 am He was stationed in the Travel Checker Document TDC, when a female passenger approached Mr Martinez Podium showing copy of her ID and credit card.. The traveler said she was inside the sterile area but then went out. Mr Martinez checked her documents and let the passenger come through the checkpoint, the passenger was screened through a body scanner and her shoes went through the x-ray machine. Passenger did not have any bags with her. Mr Martinez made a mistake by not calling for additional property screening and letting the passenger come to the sterile area. Next to Mr Martinez was sitting fellow transportation security officer Zachary Alan Couto. Mr Couto observed the mistake. He kept it to himself. Also, allowed passengers to go through the whole checkpoint screening process, get into the sterile area and eventually walk a  considerable distance to the gate. After several minutes, at least 15. Officer Couto notified supervisor John Hoffart, who got enraged and approached Mr. Martinez asking if he let that passenger in. Mr. Martinez said yes. After this, Mr. Martinez was pulled out of his station and asked to write a memo. Hoffart escalated the situation and located the passenger, bringing her back to the checkpoint where she was questioned. Mr Martinez was desertified and was not allowed to do any type of screening, then he had a meeting with Manager Stuart Martin and John Hoffard where he explained the situation and

acknowledged the mistake. Manager Martin stated that they would perform an investigation. Despite making the same error, Mr. Couto kept doing screening functions. Two days after the incident, Mr. Martinez was terminated from his job.

8. Mr. Martinez is a native of Colombia. He became a US citizen in 2013.

9. Mr. Martinez was  40 years old. His date of birth is December 23, 1980. Between January 2019 and January 2022 there is statistical evidence that 8 officers out of 18 were 40 years and over. These officers were terminated from their positions. This is 45% of terminations of male officers while on a trial period and represents a pattern. See Ex. J.

10.  Transportation Security Administration is a federal agency under The Department of Homeland Security, it became a federal agency after the 9/11 attacks in order to ensure safety in the transportation system.

11. Mr. Martinez worked as a Transportation Security Officer with TSA  from June 9, 2019 to June 8, 2021 at 08:00 am.

12. Mr. Martinez was terminated  6 hours before his trial period of 2 years.

13. Mr. Martinez's performance evaluations were satisfactory.

14. Mr.. Martinez was not under any Performance Improvement Plan or any disciplinary actions before the incident.

15. Mr. Roy Murray Assistant Federal Security Director terminated Mr. Martinez based on his national origin, race, age 40, and color. The complainant supports this claim based on the disproportionate decision of termination and the disparate treatment performed by the Agency.

16. Mr. Murray used the Trial period as an excuse to fire Mr. Martinez six hours before ending the trial period.

17. Mr Murray's statements are based on the situation mentioned in paragraph 7. The passenger was not a danger to public safety or the aircraft. That day TSA agents were overworked due to short staff. Plus, the complainant was facing issues with his son's health. *See* exhibit H.

18. Next to the plaintiff's Podium was on duty another officer named Zachary Alan Couto who is white, 32 years old, and has the same position. *See* Ex C

19. Mr. Couto has had several calls for attention due to his inappropriate behavior while performing his duties. Plus, Mr Couto has been involved in a previous incident with another officer who was terminated.. This event shows that the agency in Phoenix Sky Harbor is using favoritism. It is a statistical pattern. Furthermore *See* Ex. D. Mr Couto used tattling techniques to get attention or a promotion violating the principles of teamwork. It is also heard that M. Couto employee bullies other co-workers using jokes or offensive comments. *See* Ex. Q

20. What Mr . Murray states in the termination letter at the end of paragraph three is not completely true. He states that Mr Couto notified the supervisor John Hoffart "immediately" after he noticed Mr .Martinez's mistake. What he states in the termination letter"immediately" is completely false as he mentioned that the passenger was located at the A gate A which is a few steps from the checkpoint and brought back to the checkpoint. This whole process takes several minutes, at least 10 on a busy day. *See* Exhibit C.

21. Mr Martinez acknowledged the mistake from the beginning. It was a human mistake and there was no harm to people or property.

22. Mr Murray overacted when stating that the complainant's actions could have had grave consequences. The passenger was not even carrying any property and was screened in the AIT body scanner. Her shoes were scanned in the x-ray machine.

23. Plaintiff knew about the standard's operational procedures but plaintiff was overwhelmed mentally regarding his son's behavioral health condition. TSA agents make mistakes all the time.

24. Passenger was not carrying any weapons or explosives. There was not any transcendence in the event.

25. Fellow TSO Zachary Alan Couto was 31 years old at the time of the incident and is white.

26. Mr.  Zachary Alan Couto performed the same mistake as the plaintiff by improper omission.
Defendant Couto was close to the facts and as part of a team and did not interrupt the misstep, he also did
not approach the plaintiff to help him or correct the error. There was less than 6 ft distance between the
podiums. .

27.  Defendant Zachary Couto acted with premeditation, malice and treachery towards his fellow
co-worker. He observed the operational mistake to the end and once culminated, waited several minutes,
and  went to inform the supervisor. Besides, other officers do not have a good opinion about Mr. Couto 's
behavior and moral character.  See Ex. Q. It is also that Mr Martinez should not have been the only one
punished.  Mr Couto's actions are questionable. Instead of stopping the mistake,  he allowed the error to
continue by also letting passengers walk at least 488 ft  to the gate A See ExC. . This could have
compromised people and property safety also. Mr Couto's  actions lack honorability as it was done based
on his personal interest.

28. There was not any type of disciplinary action against M.  Couto.

29. Circumstantial evidence proves that disparate treatment was applied between Mr Martinez and Mr
Couto as the defendant Mr. Couto performed the same mistake as the plaintiff. If there was any weapon or
anything grievous have occurred Mr. Couto would have been responsible for letting the passenger go
through the checkpoint. Other off-duty workers expressed their opinion about the unfairness of the event.
See Ex. Q

30. Manager never offered other solutions such as training or disciplinary action.

31. Supervisor John Hoffartt escalated the error to an extreme.

32. From January 2020 to the date of termination Mr. Martinez experienced several incidents with
supervisor Hoffart such as not supporting team members and siding with other parties, discrimination and
escalation of other incidents while working in the same checkpoint A. Mr Hoffard is well known for his
volcanic temper, abusive behavior and disrespect to subordinates.

33. On March 1st, 2021 defendant Supervisor Hoffart pulled aside the plaintiff from the team stating. I'm
pulling you over due to the fact that you came from overseas and that you are Latino.

34. He separated the plaintiff from the team despite the plaintiff notifying him that he was Covid- 19 tested negative. Mr. Hoffart never requested a Covid-test. But pulled aside the complainant. *See* Ex. P.

35. At the beginning of May 2021, the Plaintiff experienced another incident with Deputy Abert Diaz who was disrespectful towards him in front of another law enforcement officer while stationed in the exit A. *See* Ex. F. This also leads to retaliation from management. The transportation security administration supports management abuse and a toxic work environment against subordinates. Despite that the complainant notified ASFD Roy Murray regarding the event. Mr Murray or anyone of the management did not take any actions. But Mr Murray documented the event on June 16, 2021 when complainant was already terminated just to cover the agency's abuse of authority and disrespect against subordinates.

36. Termination decision reflects the lack of morality within the TSA agency. At the time of the termination the airport was short-staffed by officers. Most of the officers were overworked by the flux of travel after the surge of the pandemic.

37. Punishing Mr. Martinez by terminating his employment a few (6) hours before ending his trial period was disproportionate as there was no crime committed, no damages caused to the public or property by the screened passenger. For that reason the complainant claims *disparate treatment* by the agency.

38. The manner Supervisor Hoffartt handled the situation was so extreme as the passenger was treated as a criminal. However, the traveler probed that she was not carrying anything nefarious.

39. Mr. Zachary Alan Couto was under a trial period.

40. All four workers involved in the events that led to the firing are white and their national origin is American: Zachary Alan Couto, Transportation Security Officer. John Hoffart Transportation Security Supervisor, Roberto Ast, Checkpoint manager and Roy Murray, Assistant Federal Security Director.

40. On June 8th 2021 Mr Martinez was fired by Manager Roberto Ast after following Mr. Roy Murray directions.

41. On June 6th, 2021, after the incident Mr Martinez had a conversation with the union representative Jovan Petkovic. Mr Petkovic stated to Mr Martinez to not worry about the event. That the worst case

scenario might be to be decertified for some time and perform light duties, re-train and become certified again to return to duty. Unfortunately, Mr Martinez trusted in the Union representative advice, the representative and the Union eventually left the complainant alone. *See* Ex I.

42. Transportation Security Administration has acted willfully and in careless disregard of Mr Martinez right under chapter VII and the ADEA by discharging him from employment on account of his age, race, color and national origin.

43. As a consequence of being fired by the TSA. Mr. Martinez has suffered damage to his reputation and harm to his career with the federal government. He has faced physical pain and sorrow.

44. The complainant lasted all administrative remedies with the EEOC. The complainant filed a formal complaint on August 2nd, 2021. On December 6th, 2022 The EEOC Phoenix District Office Administrative Judge granted the defendant's Motion of Summary Judgement after three months of MSJ submitted by the agency. *See* Ex. K The complainant filed Pro-Se and the lack of experience, benefited the agency who hired an attorney for the litigation. Mr. Martinez does not agree with the discovery phase with the EEOC and wants to pursue proper discovery with this complaint also.

STATEMENT OF CLAIMS

COUNT 1. VIOLATION OF TITLE VII

45. Mr. Martinez repeats and incorporates by reference the allegations mentioned in  paragraphs 1 to 44.

46. TSA fired Mr. Martinez based on his national origin, race, color  and violated his right to equal employment opportunity by Title VII.

COUNT 2. VIOLATION OF ADEA

47. Mr Martinez repeats and incorporates by reference the allegations mentioned from Paragraph 1 to 44.

48. TSA fired Mr. Martinez based on his age and violated his right to equal employment opportunity by Title VII.

## 17. PRAYER FOR RELIEF

a.   Back pay with prejudgment interest and all fringe benefits he is entitled.

b.   Front pay and benefits.

c.   Compensatory damages for non-economic injuries in an amount authorized by title VII.

d.   Punitive damages and punish TSA for future acts on employment discrimination under Title VII.

e.   Liquidated damages in an amount equal to twice Mr. Martinez pay losses as authorized by the ADEA.

f.   Such other legal and equitable relief or maybe just or proper under circumstances.

g.   Change of termination to resignation.

Dated:  March 10, 2023

Respectfully Submitted:

AUGUSTO J MARTINEZ

3104 E Camelback Rd, No 25-34

Phoenix AZ 85016

Tel. 818.272.6336

Augmart2@gmail.com

Index.

Exhibit A. Termination letter.

Exhibit B: Complainant's Statement

Exhibit C: Map Distance between Podium and Gates, Checkpoint A wait times.

Exhibit D: Incident between Zachary and Officer Webster.

Exhibit F. Deputy Albert Diaz incident.

Exhibit G. Text between the complainant and Mr. Webster.

Exhibit H. Mr. Martinez's son's medical condition.

Exhibit I. Communications with AFGE Union representative Jovan Petkovic.

Exhibit J: Fired officers during the trial period that are 40 years and over.

Exhibit K: Final action from Agency.

Exhibit P. Covid Test.

Exhibit Q. Texts messages regarding the opinion of other co-workers about Zachary Couto.

Exhibit A. Termination letter.

U.S Department of Homeland Security
410 N 44th St, Suite 300
Phoenix, AZ 85008
Phone (480) 375-2600 Fax (602) 231-0160



Transportation
Security
Administration

**Date:** June 8, 2021

**To:** Augusto Martinez
Transportation Security Officer (TSO)
Phoenix Sky Harbor International Airport (PHX)

**From:** Roy Murray
Deputy Assistant Federal Security Director (DAFSD)
Phoenix Sky Harbor International Airport (PHX)

**Subject:** Termination During Trial Period

**Ref:** ER Case No. 21-3867

In accordance with the Transportation Security Administration (TSA) Management Directive 1100.31-1, *Trial Periods*, employees may be terminated at any time during their trial period if the determination is made that the employee's performance or conduct is not sufficient for retention.

On June 09, 2021, the Transportation Security Administration (TSA) hired you as a Transportation Security Officer, SV-1802-D in the excepted service. Based on *TSA Management Directive 1100.31-1, Trial Periods*, Paragraph 4.A., your appointment is subject to completion of a two-year trial period, which is defined as a "period of time during which a supervisor assesses a new employee to ensure his or her performance and conduct are at a satisfactory level for continued employment," Paragraph 7.B.(1) states that "at any point during the basic trial period when the appropriate management official determines that an employee's performance or conduct is unacceptable, he or she may initiate the termination." I have decided to terminate your TSA employment. **Your termination is effective immediately upon receipt of this letter.** This action is taken to promote the efficiency of the service and is based on the following reasons.

On June 6, 2021, while performing the Travel Document Checker (TDC) duties, you failed to follow the Checkpoint Standard Operating Procedures (SOP) when you allowed a female passenger to proceed through standard screening without properly conducting a positive handoff to ensure that she received additional screening as required. In fact, while reviewing the passenger's travel documents, you were overheard by your peer telling the passenger, *I am going to let you through this time but next time I will not*, or words to that effect. Your peer immediately notified Supervisory Transportation Security Officer (STSO) John Hoffart, who with the assistance of several others, took action to locate the passenger at the gate and return her to the Checkpoint to complete the necessary screening. While en route back to the Checkpoint, the passenger confirmed

*Warning:* This document may contain Privacy Act and/or Sensitive Personally Identifiable Information.

File: 1100.7.3

www.tsa.gov

that you told her that you were not supposed to let her in but that you would this one time, or words to that effect.

On the same date, STSO Hoffart discussed the incident with you and you admitted that you did not call for assistance to ensure a positive handoff of the passenger so that she could receive the necessary additional screening. When questioned as to why you let the passenger through TDC without ensuring that she receive the proper procedure you replied, *I have a lot of stuff on my mind, I am not sure why I did what I did*, or words to that effect.

The witness statements, including the verbal statement from the passenger, support that you knew that the passenger required additional screening, yet you made a conscious decision to let her bypass the TDC without requiring her to undergo the necessary additional screening. Fortunately, the passenger was able to be located and returned to the Checkpoint for completion of the secondary screening, but your actions could have had grave consequences. You chose to disregard TSA's SOP and allowed a passenger into the sterile area who had not been properly screened. You knew this was required, yet did not follow the SOP and admitted to doing so, blaming this on *having a lot on (your) mind*. This is a risk that I cannot take going forward.

Because you are being terminated during your trial period, you do not have appeal or grievance rights with regard to this termination. If you allege this termination action was taken because of a prohibited personnel practice as provided in 5 U.S.C. §§ 2302(b)(1), 2302(b)(8), or 2302(b)(9), you may file a complaint with the Office of Special Counsel (OSC). Additional information on prohibited personnel practices may be found at the OSC website at https://osc.gov.

You must return all TSA-issued property to your supervisor, including ID badge(s), equipment, and manuals in accordance with TSA MD 1100.73-2, *Dress and Appearance Responsibilities for Uniformed Officers* signed October 23, 2018. You also must return all TSA badges, patches, and other insignia from TSA purchased uniform items. You also are required to remove and return for disposal all TSA patches, badges, and other insignia from self-purchased uniform items. You may keep uniform items from which TSA patches, badges, and other insignia have been removed and all uniform items that do not include TSA insignia regardless of whether they were purchased by you or TSA.

**You will be required to make arrangements to complete the mandatory exit packet with PHX-Human Resources personnel within five (5) days of the receipt of this Notice by calling 480-375-2510. You must return all TSA-issued property either to your supervisor including ID badge(s), equipment, and manuals in accordance with TSA Management Directive No. 1100.73-2, *TSO Dress and Appearance Responsibilities*, dated February 3, 2010. You also must return all TSA-issued uniforms that contain TSA insignia; however, you may keep self-purchased uniform items that contain TSA insignia only if you remove all insignia from the clothing and return the insignia to TSA. You will not be allowed access to the TSA offices at Phoenix Sky Harbor Airport or any other TSA facilities following your exit appointment. Therefore, when you schedule your appointment to exit within five (5) calendar days from receipt of this letter you will need to bring all of the TSA issued property with you to your exit appointment at HR. If you have any questions regarding your separation or the exit process, please contact the Human Resources Department at 480-375-2510.**

*Warning:* This document may contain Privacy Act and/or Sensitive Personally Identifiable Information.

You are advised that TSA regulations prohibit you from divulging Sensitive Security Information (SSI) even after you are no longer employed by TSA. If you disclose SSI, TSA may seek a civil or criminal penalty or take other enforcement action against you.

Be advised that in accordance with Transportation Security Administration (TSA) Office of Human Capital (OHC) Management Directive (MD), 1100.30-31, *Debarment of Applicants*, former TSA employees are debarred from TSA employment for a period of three (3) years if the separation was based on: failure to successfully complete the Annual Proficiency Review or failure to successfully complete necessary required training (if applying to the same or similar position previously held); unacceptable performance; misconduct; fitness (suitability) determination; and/or in cases where the former employee resigned, retired, or separated after receiving a proposed removal/termination letter.

Please sign the acknowledgement of receipt below. Your signature does not indicate agreement with this action; it only represents receipt of this notice on the date signed.

**Acknowledgement of Receipt:**

_Augusto Martinez_ (signature)
Augusto Martinez
TSO

6/8/2021   0611am
Date/ Time

_Roy Murray_ (signature)
Roy Murray
DAFSD

6/8/2021   0540
Date/Time

**Delivered by:**

Asi Robert  TSM   _(signature)_
Name/Title

6/8/2021   0611
Date

---

**Warning:** *This document may contain Privacy Act and/or Sensitive Personally Identifiable Information.*

Exhibit B: Complainant's Statement

1

## **AFFIDAVIT**

2

3   **STATE OF ARIZONA**

4

5   **CITY OF PHOENIX**

6

7   I, Augusto Martinez, make the following statement freely and voluntarily to Tuyet

8   Longoria, who has identified herself as an EEO Contract Investigator for the United

9   States Department of Homeland Security, Transportation Security Administration ("the

10   Agency"). I understand that this statement is not confidential and may be shown to the

11   interested parties (those with a legal right to know). I understand that this statement may

12   be used in evidence.

13   I understand that the Agency has accepted for investigation the following claims:

14   Whether Complainant, a former Transportation Security Officer (TSO) at Phoenix
15   Sky Harbor International Airport (PHX), in Phoenix, AZ, was discriminated
16   against and harassed on the bases of national origin (Colombian) and age (YOB
17   1980) when:
18
19       1.     On March 1, 2021, a management official removed Complainant from a
20               briefing; and
21
22       2.     On June 8, 2021, management terminated Complainant from federal
23               employment.
24
25   *1.*    *Please state your full name.*

26       Augusto Martinez

27   *2.*    *What was your position title, pay band, and duty location from March 2021 to*
28       *June 2021?*
29
30       TSO-E-Band at PHX.

31   *3.*    *For how long were you in this position?*

32       From June 9, 2019 to June 8, 2021

33

Page **1** of **5**

1    4.    *What was the address of your duty station?*

2    3400 E Sky Harbor Blvd.
3    Phoenix, Arizona 85034
4
5    5.    *For how long did you work for the Agency?*

6    From June 9, 2019 to June 8, 2021

7    6.    *From March 2021 to June 2021, who were your first-line and second-line*
8          *supervisors, by name and position title?*
9
10    David Govan-STSO

11    Stuart Martin-TSM

12    7.    *Please state your national origin.*

13    Colombian

14    8.    *Please state the year of your birth.*

15    1980

16    9.    *When and how did the Responsible Management Official(s) under your current*
17          *EEO investigation become aware of your national origin?*
18
19    I do not know.
20
21    10.    *When and how did the Responsible Management Official(s) under your current*
22           *EEO investigation become aware of your age?*
23
24    I do not know.
25
26    Claim #1:    *On March 1, 2021, a management official removed Complainant from a*
27               *briefing;*
28
29    11.    *Who on March 1, 2021 removed you from a briefing?*

30    John Hoffart

31    12.    *What was the briefing about?*

32    It was the beginning of shift briefing.

33

AUGUSTO MARTINEZ
HS-TSA-01561-2021

Initials_____

13.  *What reason was given for removing you from the briefing?*

He said it was because I was Colombian and due to Covid-19.  I told him I was vaccinated.

14.  *Why do you believe your national origin was a factor in being removed from the briefing?*

Due to comment John Hoffart made about me being Colombian.

15.  *Why do you believe your age was a factor in being removed from the briefing?*

Age was not a factor.

16.  *Who are you comparing yourself to? Specifically, were other employees not removed from a briefing under similar circumstances as you? If so, who and what are the national origin and age if known for these employees?*

On this day, no one was removed from briefing but me as I was coming back from overseas.

17.  *How were you harmed when you were removed from the briefing?*

I did not feel good.  I thought it was unfair and made me sad.

Claim #2:    *On June 8, 2021, management terminated Complainant from federal employment.*

18.  *Who on June 8, 2021 terminated you from federal employment?*

Roy Murray

19.  *What reason was given for terminating you?*

It was due to a mistake I made regarding document checking procedures.  A passenger did not have a physical ID, only a photocopy and debit card.  I let the passenger through instead of sending the passenger through secondary screening. The passenger did not have any bags so I let her pass through without secondary screening.  It should be noted I had a lot on my mind that day as my son was sick.

20.  *Do you believe you were performing at a successful level, but was terminated anyway? If so, why do you believe this? What can you provide to support this belief?*

Page 3 of 5

AUGUSTO MARTINEZ
HS-TSA-01561-2021

Initials 

000058

1    My performance evaluation was good but I was fired one day before my
2    probationary period ended.
3
4    21.   *When were you first advised of performance deficiencies and by whom?*
5          I was never advised of any performance deficiencies and I was terminated for this
6          incident on June 6, 2021 only.
7
8    22.   *Why do you believe your national origin was a factor in your termination?*
9          It was disparate treatment for other employees who were not Colombian.
10   23.   *Why do you believe your age was a factor in your termination?*
11         Younger employees were not terminated.
12   24.   *Who are you comparing yourself to? Specifically, were other employees not*
13         *terminated during the trial period under similar circumstances as you? If so, who*
14         *and what are the national origin and age if known for these employees?*
15
16         Zachary Couto, American about 31 years old.
17
18   25.   *How were you harmed when you were terminated from federal employment?*
19         Financial and mental stress and my career with the government is ruin.
20   26.   *You allege in this EEO complaint that you were harassed.  Did you report this*
21         *alleged harassment to anyone? If so, who, when and how did you report the*
22         *alleged harassment?*
23
24         No, I did not.
25
26   27.   *If you did not report the alleged harassment, please explain why.*
27         I did not know how.  The only incident of alleged harassment involved the
28         briefing with John Hoffart.
29
30   28.   *Was your performance at work negatively impacted because of the alleged*
31         *harassment? If so, how?*
32
33         No, it was not impacted as I performed good in the two years.
34
35   29.   *Did you tell the alleged harasser that his/her behavior was unwelcome, that you*
36         *felt harassed and the conduct needed to stop? If so, how and when did you tell*
37         *him/her?*
38

Page 4 of 5

AUGUSTO MARTINEZ
HS-TSA-01561-2021

000059

Initials _AM_____

No, I never told John Hoffart.

30.  *How were you harmed by the alleged harassment?*

I did not feel comfortable around John Hoffart and tried to stay away from him.

31.  *Did you attend training on anti-harassment while employed with the Agency?*

No

32.  *What remedy are you seeking?*

Back pay and to get my job back.

33.  *Can you suggest any witnesses who may have relevant information? If so, what is the information they could provide?*

No

34.  *Is there anything you would like to add to your testimony regarding these claims?*

Zachary Couto allowed the same passenger to passed through without being terminated.

I have read the forgoing Affidavit consisting of __5__ pages and I hereby attest under

penalty of perjury that it is true and correct to the best of my knowledge and belief.  I

have signed or initialed each page.  I have been given the opportunity to make any

corrections and/or additions, which I have submitted.

_____          _____
Augusto Martinez, Complainant                           10 / 01 / 2021
                                                         Date

_____          _____
Tuyet Longoria, Investigator                             10/01/2021
                                                         Date
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*NOTHING BELOW THIS LINE\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Page **5** of **5**

☒ National Origin: Colombian
☐ Sex:
☐ Pregnancy Discrimination
☒ Age: (YOB 1980)
☐ Disability
☐ Religion:
☐ Equal Pay
☐ Genetic Information
☐ Reprisal:

### E.   PERSON(S) AGAINST WHOM ALLEGATION(S) WERE MADE

   1. John Hoffart - Supervisory Transportation Security Officer (STSO)
   2. Roy Murray - Deputy Assistant Federal Security Director (DAFSD)

### F.   PRECISE DESCRIPTION OF THE ISSUE(S) COUNSELED

Counselee stated that on March 1, 2021, Supervisory Transportation Security Officer (STSO) John Hoffart pulled Counselee out of a briefing and told him he was removed because Counselee was from overseas.
Counselee stated that on June 6, 2021, he made a mistake in the Travel Document Checker (TDC) position and STSO Hoffart removed Counselee from screening functions.
Counselee stated that all of the individuals involved in his termination were white. Counselee stated that he was fired one day before his probation period ended. Counselee stated his coworker Transportation Security Officer (TSO) Zachary Allen Cuoto made the same mistake but was not terminated. Counselee stated that TSO Cuoto was also a probationary employee who is 30 years old. Counselee stated that on June 8, 2021, Transportation Security Manager (TSM) Roberto Ast issued him a termination letter signed by Deputy Assistant Federal Security Director (DAFSD) Roy Murray.

**Remedy Requested:**

Counselee stated that he would like to be reinstated as a TSO and monetary settlement.

**Management's Response:**

Deputy Assistant Federal Security Director (DAFSD) Roy Murray stated that he never received a complaint in regards to the March 1, 2021 incident and has no knowledge of the incident. DAFSD Murray stated that on June 6, 2021, Counselee disregarded Standard Operating Procedure (SOP) and allowed a passenger through to the sterile area. DAFSD Murray stated that when asked why he had allowed the passenger into a sterile area, Counselee stated that he had a lot of things on his mind. DAFSD Murray stated that he was informed that Transportation Security Officer (TSO) Zachary Allen Cuoto immediately advised a Supervisory Transportation Security Officer of the incident to prevent the passenger from getting away. DAFSD Murray stated that he was informed by multiple sources that Counselee told the passenger "I'm going to let you through this time but I will not next time."
DAFSD Murray stated Counselee's termination was due to his complete disregard for SOP and that he could no longer be trusted to ensure the safety of the traveling public. DAFSD

Counselor Report

SENSITIVE SECURITY INFORMATION

ANNEX 1 Case number HS-TSA-01561-2021

Augusto J Martinez

3104 E Camelback Rd #2534

Phoenix AZ 85016

Tel 818.272.6336

---

**REBUTTAL**

---

Claim 1.

1. In response to paragraph 2. Supervisor Hoffart never asked about the Covid Status or if the complainant was tested or requested proof of testing. Which I had at the time. He did not give the briefing. However, he was present in the briefing and pulled the complainant aside when he showed up to the meeting. While I was put aside he stated he was pulling me from the briefing as just come from overseas and I'm Colombian. He kept the complainant aside for maybe 10 minutes until he got hold of someone that authorized I was able to go back on duty.  The complainant felt very sad and offended that morning.

WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552

SENSITIVE SECURITY INFORMATION

2.  In response to paragraph 3, Complainant does not know the procedures Supervisors do
    when pulling employees from briefings. However, the complainant's perception is
    discrimination and harassment from STSO Hoffart, not only on this occasion but also in
    others. Supervisor Hoffart has a reckless temper and yells at fellow TSO's in public. He
    uses intimidating techniques when questioning fellow officers. Which is very rude and
    disrespectful. It's known he is a retired police officer from a town where most of the
    population is white.

Claim 2

1.  In response to paragraph 4, the complainant admitted the mistake since the date it
    occurred. As he agrees, there was no notification regarding the complainant's
    performance. He made his decision stating that the complainant made a conscious
    decision. But, the complainant denies this as he was facing a lot of problems in his
    personal life at that time, especially his son who had Covid and Behavioral Health
    Issues. Regarding integrity concern, this is very doubtful in the TSA where worst
    incidents have occurred like the following:

a.  Close to Christmas 2020 a female passenger approach TDC in Terminal 3,  the
    passenger was nude, fellow TSO took picture of the naked passenger using government
    official cameras, then distributed it between themselves using social media, Whatsapp,
    and text messages. Officers involved in this scandal were put on leave but eventually, all
    of them retook their positions and now they are on duty and getting paid. This is

WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may
be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the
Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil
penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552

SENSITIVE SECURITY INFORMATION

attempted against a person's privacy rights. Those who take sexual pictures and distribute them without a person's consent it's considered a felony and can face charges because of that decision. How can Mr. Murray question my integrity and punish me and not inquire about the integrity of that group of employees, plus hiring them back?

b. Regarding the incident with Mr. Couto that led the complainant to get terminated technically having accomplished his trial period. Mr. Couto acted with treachery, premedIation, and malice as he noticed the mistake and also allowed the passenger to walk through the checkpoint until the gate. On a busy day like June 6th, 2021 that team was short and overworked so at least it might have taken 15 minutes to go through checkpoint A. Mr Couto acted selfish, thinking to get credit based on the co-worker's grief. Mr Couto ignored the principles of Teamwork just to benefit himself. Coworkers were upset about Mr. Couto's actions, he even transferred to a different checkpoint 2 weeks after as he was experiencing grief, everyone acted very distant to him after my firing. Fellow officers questioned why he was not fired as he allowed the mistake to continue instead of acting immediately. Furthermore, Mr Couto's background is very shady. According to the website  Inteliusin, this individual faced charges of Assault and disorderly conduct in 2008.. There is another charge of Assault-intent/Reckless injure in 2012. I have text messages of co-workers that exhibit the character of Mr Couto and his negative opinion of his actions towards the complainant on June 6th, 2021.

The complainant's termination was a catalyst, unfair and demonstrated that TSA applies disparate treatment

WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552

SENSITIVE SECURITY INFORMATION

2. In response to paragraph 4 DAFSD Murray.  The complainant never reported bullying or harassment from Mr Hoffart as he did not know how the system works and he feared retaliation. Complainant spoke to Manager Stuart Martin once that Supervisor Hoffard sided with a passenger and yelled Mr Martinez regarding a pat-down.  I acknowledge I should have had reported every incident.

3. Regarding paragraph 5 STSO Hoffard Allegations are vague, despite it being truth the complainant made the mistake. Mr Hoffart estated to the complainant during the interrogation about the incident to not worry that the TSA had the complainant's back that it just required a refreshing training. He justifies Mr Couto actions as he got credit for it also, he took the issue to the extreme. Why Mr Couto waited that passenger arrive to gate?. The document check process takes a few seconds, less than 10 seconds. So it's suspicious Mr Couto was busy with a passenger during all this time. He premeditated what he did.

4. In response Paragraph 5 response to STSO. The complainant never spoke to him regarding he felt harassed and bullied but always kept a distance from him.

Conclusion

1.   As an issue of law TSA violated the  rights title VII of the 1964 Civil rights act 42 U.S.C. §2000e *et. seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 *et. seq.* ("ADEA").

2.   As an issue of facts, Mr Martinez rights were violated by the application of disparate treatment in the Agency.

WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552

SENSITIVE SECURITY INFORMATION

3.  The reason why complainant decided to pursue this lawsuit is to fight for the rights of those government workers who have been discriminated, harassed and treated unfairly and also to promote the importance of the principles regarding Team Work.


Dated: October 25, 2021, Phoenix AZ


Respectfully


Augusto J Martinez

WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552

Exhibit C: Map Distance between Podium and Gates, Checkpoint A wait times.



# Phoenix Sky Harbor TSA Security Wait Times

How long will it take you to pass through the security lines at Phoenix International Airport? What are the Sky Harbor TSA wait times right now? Find out below!

# Phoenix Sky Harbor International (Phoenix, AZ)



6

Passengers moving through the security checkpoints should anticipate waiting on average for:
**6 minutes and 6 seconds**

## TSA Precheck Lanes: Available

**Terminal 3**

North Checkpoint                                                                     **Open**

**Terminal 4**

Checkpoint A                                                                          **Open**

Checkpoint B                                                                          **Open**

Sky Harbor TSA Security Wait Times - Phoenix International Airport PHX

# Estimated Wait Times For Today

| Checkpoint C | | Open |
| --- | --- | --- |
| Checkpoint D | | Open |

| Time | Wait |
| --- | --- |
| 1 am - 2 am | |
| 2 am - 3 am | |
| 3 am - 4 am | |
| 4 am - 5 am | 20 m |
| 5 am - 6 am | 18 m |
| 6 am - 7 am | 6 m |
| 7 am - 8 am | 10 m |
| 8 am - 9 am | 10 m |
| 9 am - 10 am | 14 m |
| 10 am - 11 am | 7 m |







Exhibit D: Incident between Zachary and Officer Webster.



U.S. Department of Homeland Security
410 N. 44th St, Suite 300
Phoenix, AZ 85008
Phone (480) 375-2600 Fax (602) 231-0160



**Transportation
Security
Administration**

**Date:**     **January 6, 2021**

**To:**       **Timothy Webster Jr.**
            **Transportation Security Officer (TSO)**
            **Phoenix Sky Harbor International Airport**

**From:**     **Roy Murray**
            **Deputy Assistant Federal Security Director – Screening (DAFSD-S)**
            **Phoenix Sky Harbor International Airport**

**Subject:**  **Termination During Trial Period**

**Ref:**      **ER Case No. 20-9533**

In accordance with the Transportation Security Administration (TSA) Management Directive (MD) 1100.31-1, *Trial Periods*, employees may be terminated at any time during their trial period if the determination is made that the employee's performance or conduct is not sufficient for retention.

On June 9, 2019, the Transportation Security Administration (TSA) hired you as a Transportation Security Officer (TSO) (SV-1802-D) in the excepted service. Based on TSA Management Directive 1100.31-1, *Trial Periods*, paragraph 6A.2, your appointment is subject to completion of a two-year trial period which is defined as "a period of time during which a supervisor assesses a new employee's performance and conduct to ensure his or her performance and conduct are at a satisfactory level for continued employment." Paragraph 7.B. (1) states that "at any point during the basic trial period when the supervisor determines that an employee's performance or conduct is unacceptable, he or she may initiate the termination." I have decided to terminate your TSA employment. **Your termination is effective immediately upon receipt of this letter.** This action is taken to promote the efficiency of the service and is based on the following reasons.

On September 3, 2020, while on duty at Phoenix Sky Harbor International Airport, Checkpoint A, you engaged in unprofessional conduct. During the incident, you and TSO Zachary Couto were performing your duties near the partition wall located between the Pre-Check Lane and the briefing area, which is in a publicly visible area of the Checkpoint. TSO Couto leaned against the partition wall causing it to swing back. Thereafter, the partition wall gently swung back toward TSO Couto. TSO Couto leaned into the partition wall again causing it to lightly bump the two (2) individuals sitting on the other side, Supervisory Transportation Security Officer (STSO) Allison Erives and Lead Transportation Security Officer (LTSO) Kristina Erives. LTSO Erives gently pushed the partition wall back in order to stop it from continuing to hit her and STSO Erives. Upon noticing

*__Warning:__  This document may contain Privacy Act and/or Sensitive Personally Identifiable Information.*

this, you walked toward the partition wall forcefully and forcefully pushed it, causing it to swing back. As a result, STSO Erives was hit in the head and caused an injury.

In her written statement dated September 7, 2020, STSO Erives wrote:

> "Someone pushed on the wall and it lightly bumped us. LTSO Erives pushed it back so it was not hitting us. Someone on the other side of the wall then lightly pushed it back. LTSO Erives again pushed it back. All of a sudden, I was hit in the back of the head by the wall and heard a loud thud. It sounded as though someone had punched it."

In her written statement dated September 7, 2020, LTSO Erives wrote:

> "Someone on the other side of the wall pushed the wall towards (sic) us and lightly hit us. With my elbow I pushed the wall slightly away as to not have it against us. I felt the wall move towards (sic) us again so once again I used my elbow to nudge the wall away from us. That's when I heard a loud bang and the wall hit my elbow and STSO Erives in the head."

In your written statement dated September 3, 2020, you admit to this misconduct, writing:

> "At approx. [approximately] 1245 to 1300 [hours] the pre-check/briefing wall was pushed toward the pre-check side, in response, Zach Couto pushed it back only for someone on the other side to press it back toward pre-check, at which time I went over and pressed it back. This seemed to lead to a misunderstanding over whether it was a joke from those on the other side. STSO Allison Erives emerged seemingly mad at what had occurred wanting to know who was responsible before retreating to the back…".

Your actions are in violation of TSA MD 1100.73-5, *Employee Responsibilities and Code of Conduct*, Section 6, Policy, which provides that an employee's conduct at work directly affects the proper and effective accomplishment of their official duties and responsibilities. Employees are responsible for performing their duties in a professional and business-like manner throughout the workday. They are expected to conduct themselves in a manner that does not adversely reflect on TSA, or negatively impact its ability to discharge its mission, cause embarrassment to the agency, or cause the public and/or TSA to question the employee's reliability, judgment or trustworthiness. You are also in violation of the same MD, Section 5.D.3, which requires employees to exercise courtesy and tact, even when provoked, and to support a productive and hospitable model work environment.

Because you are being terminated during your trial period, you do not have appeal or grievance rights with regard to this termination.

You must return all TSA-issued property to your supervisor, including ID badge(s), equipment, and manuals in accordance with TSA MD 1100.73-2, *TSO Dress and Appearance Responsibilities*, signed October 23, 2018. You must return all TSA badges, patches, and other insignia from TSA-purchased uniformed items. You are also required to remove and return for disposal, all TSA patches, badges, and other insignia from self-purchased uniformed items. You may keep uniformed

***Warning:*** *This document may contain Privacy Act and/or Sensitive Personally Identifiable Information.*

items from which TSA patches, badges and other insignia have been removed and all uniformed items that do not include TSA insignia, regardless of whether they were purchased by you or TSA.

**You will be required to make arrangements to complete the mandatory exit packet with PHX Human Resource personnel within five (5) days of receipt of this Notice by calling 480-375-2510.  You must return all TSA-issued property to your supervisor including ID badge(s), equipment, and manuals in accordance with TSA MD 1100.73-2, *TSO Dress and Appearance Responsibilities*, dated February 3, 2010.  You must also return all TSA-issued uniforms that contain TSA insignia; however, you may keep self-purchased uniform items that contain TSA insignia only if you remove all insignia from the clothing and return the insignia to TSA.  You will not be allowed access to the TSA offices at Phoenix Sky Harbor International Airport or any other TSA facilities. Therefore, contact the Resource Department at 602-794-3222 within five (5) calendar days from receipt of this letter to set up an appointment to return your TSA issued property.**

**If you have any questions regarding your separation or the exit process, please contact the Human Resource Department at 480-375-2510.  Failure to make timely contact with your supervisor and/or completion of all exit requirements may result in Federal prosecution and/or fines.**

You are advised that TSA regulations prohibit you from divulging Sensitive Security Information (SSI) even after you are no longer employed by TSA.  If you disclose SSI, TSA may seek a civil or criminal penalty or take other enforcement action against you.

Be advised that in accordance with Transportation Security Administration (TSA) Office of Human Capital (OHC) MD, 1100.30-31, *Debarment of Applicants*, former TSA employees are debarred from TSA employment for a period of three (3) years if the separation was based on: failure to successfully complete the Annual Proficiency Review or failure to successfully complete necessary required training (if applying to the same or similar position previously held); unacceptable performance; misconduct; suitability determination; and/or in cases where the former employee resigned after receiving a termination letter.

Please sign the acknowledgement of receipt below.  Your signature does not indicate agreement with this action; it only represents receipt of this notice on the date signed.


Attachments:
TSA MD 1100.30-31- Debarment of Applicants
Ethics Guidance for Post-Government Employment


***Warning:*** *This document may contain Privacy Act and/or Sensitive Personally Identifiable Information.*

Acknowledgement of Receipt:

_____          _____
Timothy Webster Jr.                         06 Jan 21
TSO                                         Date

_____          _____
Roy Murray                                  1/6/2021
DAFSD-S                                     Date

Delivered by:

_____          _____
Name/Title                                  1-6-2021
                                            Date

*__Warning:__  This document may contain Privacy Act and/or Sensitive Personally Identifiable Information.*

Exhibit F. Deputy Albert Diaz incident.



**Transportation
Security
Administration**

U.S. Department of Homeland Security
410 N. 44ᵗʰ St, Suite 300
Phoenix, AZ 85008
Phone (480) 375-2600 Fax (602) 231-0160

**Fact Finding Summary**

DATE: June 16, 2021

TO: PHX-ER

FROM: DAFSD Roy Murray

RE: Interaction Between TSO Martinez and DAFSD Diaz at T4A Exit

On May 12, 2021, TSO Augusto Martinez sent me an email concerning an interaction between him and DAFSD Albert Diaz at T4A Checkpoint exit on May 4, 2021. TSO Martinez alleged that while performing his duties as the exit lane monitor DAFSD Diaz embarrassed him in front of a Law Enforcement Officer (LEO) that was at the exit waiting on an STSO to sign him in. He claims that he gestured DAFSD Diaz to show him his badge and that DAFSD Diaz held his badge in a close hand and shouted at him to stand up. TSO Martinez stated the reason for reporting the interaction was "no matter what position you are in. It does not entitle anybody to humiliate fellow co-workers or subordinates. Corrections are made in private, not in public. Plus, I was not doing anything incorrect regarding our code of conduct. It's understandable that it looks better to stand in the Podium when a superior or even an officer approach. However, there is no need to act with arrogance, disrespecting another associate. As TSOs we have to deal everyday with pressure from the work itself, management and dealing with passengers. There is no need to deal with this type of insolent situations. Moreover, this is not the military. We are here to support each other and treat ourselves with respect." (attachment 1)

On May 4, 2021, DAFSD Diaz spoke to me concerning the interaction he had with TSO Martinez at T4A Checkpoint exit. Deputy Diaz stated that TSO Martinez was slouching in his chair at the exit, didn't reply to his greeting of "good morning", nor did he stand up when he approached the exit lane to check his credentials and as a result he waited for TSO Martinez to stand before presenting his credentials. According to DAFSD Diaz statement of June 15, 2021' TSO Martinez didn't respond to his attempt at small talk after he was required to exhibit command presence.

On May 13, 2021 I responded to TSO Martinez in an email that "I will discuss this with Deputy Diaz for his awareness to avoid any future negative interaction between TSA personnel. Thank you for your professionalism in bringing this forward and allowing me to address it. Please let me know if you have any other concerns or need to speak with me directly." On May 13, 2021, I informed DAFSD Diaz of TSO Martinez email and asked him if there was more information than what we had discussed on May 4, 2021 and he replied "no". A few days later I ran into TSO Martinez and I spoke with him at the exit

2

lane at T4A. I explained to TSO Martinez that I had talked with DAFSD Diaz and that he was attempting to get him to follow the guidance sent out on March 5, 2021 concerning command presence at the exit when addressing him that day.

Covid Updates dated Friday, March 5, 2021

1. **Exit Lane Officer Guidance** – Make sure all exit lane Officers understand the importance of using their lights to review credentials and what they should be reviewing. The exit lane Officer needs to stand up when personnel approach their position as command presence is very important on the exit (see attached).

TSO Martinez acknowledged in his email, "It's understandable that it looks better to stand in the Podium when a superior or even an officer approach" and therefore knew why he was being corrected. I ask TSO Martinez if he had any other concerns and he stated "no". I considered the matter closed. I was notified on June 4, 2021 that TSO Martinez sent his email to AFGE who in turn sent it forward to AFSD Lisa Christenson, DFSD Scot Thaxton and FSD Jerry Agnew.

In Summary, I find there is no evidence to sustain the allegations of inappropriate behavior brought forward by TSO Martinez against DAFSD Diaz. It is the responsibility of every management official to correct inappropriate behavior(s) or when someone is not following issued guidance and direction and to do so on the spot.

Roy D Murray
DAFSD

3

**Murray, Roy**

| | |
|---|---|
| **From:** | Murray, Roy |
| **Sent:** | Thursday, May 13, 2021 7:00 AM |
| **To:** | Martinez, Augusto |
| **Subject:** | RE: Incident at the exit 5/4/21 |

Augusto,

I will discuss this with Deputy Diaz for his awareness to avoid any future negative interaction between TSA personnel. Thank you for your professionalism in bringing this forward and allowing me to address it. Please let me know if you have any other concerns or need to speak with me directly.

Have a great day,
*Roy D. Murray*
*DAFSD-Screening*
*DHS/TSA Phoenix, Arizona*
*602-769-6688 cell*
*Take care of your people and they will take care of the mission.*

**From:** Martinez, Augusto <Augusto.Martinez@tsa.dhs.gov>
**Sent:** Wednesday, May 12, 2021 11:00 AM
**To:** Murray, Roy <Roy.Murray@tsa.dhs.gov>
**Subject:** Incident at the exit 5/4/21

Good afternoon Mr. Roy

There was an incident with the Manager Albert Diaz. On 5/4/2021. First shift, Terminal 4, A Checkpoint. I was on my rotation in the exit position. While I was assisting a LEO checking he documentation and calling a supervisor. Meantime, Mr. Diaz arrived the exit and with a gesture I asked him to show me his badge, he kept the badge in his hands close to his chest and shouted that I needed to stand, mentioned that standing shows respect and courtesy, etc. I felt so

1

4

embarrassed in front of the LEO and did what Mr. Diaz asked for. While he walked away, he said "have a nice day". I was calling my supervisor so did not get the chance to answer his fake gesture. He then turned back and shouted at me. YOU DON'T TALK?

The reason why I report this incident is for no matter what position you are in. It does not entitle anybody to humiliate fellow co-workers or subordinates. Corrections are made in private, not in public. Plus, I was not doing anything incorrect regarding our code of conduct. It's understandable that it looks better to stand in the Podium when a superior or even an officer approach. However, there is no need to act with arrogance, disrespecting another associate. As Tsos we have to deal everyday with pressure from the work itself, management and dealing with passengers. There is no need to deal with this type of insolent situations. Moreover, this is not the military. We are here to support each other and treat ourselves with respect.

Best Regards

2

5.

**Murray, Roy**

Subject:                    FW: incident at the exit 5/4/21

From: Jovan Petkovic <jovanpetkovic@mylocal1250.org>
Sent: Sunday, May 16, 2021 10:32 AM
To: Martinez, Augusto <Augusto.Martinez@tsa.dhs.gov>; Thaxton, Scot <Scot.Thaxton@tsa.dhs.gov>; Agnew, Jerry <Jerry.Agnew@tsa.dhs.gov>
Cc: juancasarez@mylocal1250.org; Christenson, Lisa <Lisa.Christenson@tsa.dhs.gov>
Subject: Re: incident at the exit 5/4/21

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you
believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Augusto,

Thank you for the information. We forwarded this information to FSD Agnew and DFSD Thaxton.

Respectfully,

Jovan Petkovic
Secretary
AFGE TSA Local 1250
602-622-7017
jovanpetkovic@mylocal1250.org
www.mylocal1250.org
*Proudly Serving Arizona and Nevada
*AFGE TSA Council 100 Communications Committee Member

Sent from my T-Mobile 5G Device

From: Martinez, Augusto <Augusto.Martinez@tsa.dhs.gov>
Sent: Sunday, May 16, 2021, 06:54
To: jovanpetkovic@mylocal1250.org

10

**Cc:** juancasarez@mvlocal1250.org
**Subject:** Fw: Incident at the exit 5/4/21

**From:** Murray, Roy <Roy.Murray@tsa.dhs.gov>
**Sent:** Thursday, May 13, 2021 2:00 PM
**To:** Martinez, Augusto <Augusto.Martinez@tsa.dhs.gov>
**Subject:** RE: Incident at the exit 5/4/21

Augusto,

I will discuss this with Deputy Diaz for his awareness to avoid any future negative interaction between TSA personnel. Thank you for your professionalism in bringing this forward and allowing me to address it. Please let me know if you have any other concerns or need to speak with me directly.

Have a great day,
*Roy D. Murray*
*DAFSD-Screening*
*DHS/TSA Phoenix, Arizona*
*602-769-6688 cell*
*Take care of your people and they will take care of the mission.*

**From:** Martinez, Augusto <Augusto.Martinez@tsa.dhs.gov>
**Sent:** Wednesday, May 12, 2021 11:00 AM
**To:** Murray, Roy <Roy.Murray@tsa.dhs.gov>
**Subject:** Incident at the exit 5/4/21

Good afternoon Mr. Roy

There was an incident with the Manager Albert Diaz. On 5/4/2021. First shift, Terminal 4, A Checkpoint. I was on my rotation in the exit position. While I was assisting a LEO checking he documentation and calling a supervisor. Meantime, Mr. Diaz arrived the exit and with a gesture I asked him to show me his badge, he

2

kept the badge in his hands close to his chest and shouted that I needed to stand, mentioned that standing shows respect and courtesy, etc. I felt so embarrassed in front of the LEO and did what Mr. Diaz asked for. While he walked away, he said "have a nice day". I was calling my supervisor so did not get the chance to answer his fake gesture. He then turned back and shouted at me. YOU DON'T TALK?

The reason why I report this incident is for no matter what position you are in. It does not entitle anybody to humiliate fellow co-workers or subordinates. Corrections are made in private, not in public. Plus, I was not doing anything incorrect regarding our code of conduct. It's understandable that it looks better to stand in the Podium when a superior or even an officer approach. However, there is no need to act with arrogance, disrespecting another associate. As Tsos we have to deal everyday with pressure from the work itself, management and dealing with passengers. There is no need to deal with this type of insolent situations. Moreover, this is not the military. We are here to support each other and treat ourselves with respect.

Best Regards

3

12

Exhibit G. Text between the complainant and Mr. Webster.

Text between the complainant and the terminated officer whose incident involves defendant Zachary A. Couto.



Exhibit H. Mr. Martinez's son's medical condition.



**MARTINEZFRANCO, DANIEL**
Male, DOB: 10/15/2010, Age: 9 Years, 11 Months
MRN: 566-60-74, Visit: 42467569, 09/16/2020
Pasternak, Brad - Gastroenterology

*Past Hospitalization History*

☐ ☒ previous hospitalizations   ☐ ☒ previous surgical history

## Past Medical History

*Past Medical History*

☒ ☐ asthma

*Medical History: Additional Details*

Gallstones, depression

### Developmental History

development is appropriate for age;

## Family Medical History

### GI related Family History

| | | |
|---|---|---|
| ☐ ☒ **Barrett's esophagus** | ☐ ☒ **Celiac disease** | ☐ ☒ **Crohn's disease** |
| ☐ ☒ **Chronic constipation** | ☐ ☒ **Cystic fibrosis** | ☐ ☒ **Eosinophilic esophagitis** |
| ☐ ☒ **Esophageal dilation** | ☐ ☒ **Gallbladder disease** | ☐ ☒ **Gastrointestinal disorder** |
| ☐ ☒ **Reflux (GERD)** | ☐ ☒ **Helicobacter pylori (H. pylori)** | ☐ ☒ **Hepatic Disease** |
| ☐ ☒ **Irritable bowel syndrome** | ☐ ☒ **Non-specific Colitis** | ☐ ☒ **Pancreatitis** |
| ☐ ☒ **Peptic ulcer** | ☐ ☒ **Ulcerative colitis** | |

## Social History

## Vital Signs

**Body Measurements:**

| Current Weight | Ideal Body Weight (IBW) | height | BMI | Head Circum. | BSA (m2) | Birth Weight |
|---|---|---|---|---|---|---|
| 24.4kg (=53.79 lbs) 4% percentile | wt is 82% of IBW which is 29.78 kg | 134cm (=52.8 inches) 26% percentile | 13.59 1%ile | cm %ile | 0.97 | kg |

**Last Documented Weight: 24.4Kg**

**Vital Signs:**

| Temp C | Heart Rate | Resp Rate | BP | BP Percentiles | BP Mode | Cuff Size | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | systolic | 1%ile (sys ) | | | SpO2 | Pain Level 7/10 | |
| | | | diastolic | 1%ile (dias ) | | | FIO2 | Pain Scale Numeric | |

| Type | Value |
|---|---|
| PainLocation | STOMACH AND NAUSEA, DIARRHEA, CRAMPS |

## Assessment:

FOR DISTRIBUTION TO: Carlos Paldit MD. Printed By: Carlos Paldit MD    * CONFIDENTIAL *    CHARTMAXX



**PHOENIX
CHILDREN'S
*Medical Group***

**MARTINEZFRANCO, DANIEL**
Male, DOB: 10/15/2010, Age: 9 Years, 11 Months
MRN: 566-60-74, Visit: 42467569, 09/16/2020
Pasternak, Brad - Gastroenterology

| Problems | Onset | Type |
|---|---|---|
| Disruption of family by separation and divorce _Z63.5 | 2020-09-04 | Chronic Issue |
| Parent-biological child conflict _Z62.820 | 2020-09-04 | Chronic Issue |
| Adjustment disorder with mixed anxiety and depressed mood _F43.23 | 2020-09-04 | Chronic Issue |

## End of Visit - Explanation of Plan:

### Health Issue discussed today / Goals / Additional instructions:

Patient with history of diarrhea and vomiting, weight loss with gallstone
1- CBC, ESR, CRP, Celiac panel
2- Stool studies: C.dificile, Culture, Calprotectin, Giardia
3- EGD and Colonoscopy with dissacharidases
4- f/u in 3 months

## Coding: Physician Services

### Physician Involvement

**Greater than 50% of this** **80** **minute visit has been spent in counseling and coordination of care. Topics discussed are listed below and/or in the Plan section.**

current symptoms and plan for evaluation

☑ **A copy of this consult report has been auto-faxed to the referring provider.**

*Save Log*

| Author | Status | Saved | Sections authored |
|---|---|---|---|
| Pasternak, Brad (MD) | Final | 9/16/2020 11:34 am | Coding, ExplanationOfPlanGroup, FMHSection, FocusedHPI_ROS_Chapter, GastroenterologyGeneralTemplateChapter, PMHSection, ROSSection, VitalSignsSection |

*Electronically signed by Pasternak, Brad (MD) on 9/16/2020 at 11:34am*

FOR DISTRIBUTION TO: Carlos Roldit MD, Printed By: Carlos Roldit MD,    *CONFIDENTIAL *    CHARTMAXX

Exhibit  I. Communications with AFGE Union representative Jovan Petkovic.

8/1/22, 12:33 PM                                                                 Gmail - Hello!!

M Gmail                                                           AJ Martinez <augmart2@gmail.com>

**Hello!!**
3 messages

**AJ Martinez** <augmart2@gmail.com>                           Wed, Jun 16, 2021 at 10:41 AM
To: jovanpetkovic@mylocal1250.org

Good morning Jovan, hope that you are having a good week. I really appreciate your assistance as well as the rest of union members that have
tried to help in this painful process. As you know I was terminated 1 day before my trial period ended 06/09/2021. It was due to an involuntary
mistake I made as a human being. However, management did not even give me the option to resign. It was a very drastic decision from
management. There is no interest in going back to TSA. Fortunately, I am a very skilled and educated person who can perform other trades.
However, it's very harmful in my labor background to make such unfair and unproportionate decisions. Therefore, I would be thankful to exit as a
voluntary resignation instead of being terminated. We might still be on time as the exit process is not in effect yet. Please inform me what results
we might get. Feel free to call me.

Best Regards

--
Augusto J Martinez
Phoenix, AZ 85016
Tel. (818)272-6336

**Jovan Petkovic** <jovanpetkovic@mylocal1250.org>            Wed, Jun 16, 2021 at 12:25 PM
To: AJ Martinez <augmart2@gmail.com>
Cc: "Juan Casarez (juancasarez64@gmail.com)" <juancasarez64@gmail.com>

AJ,

As much as we want things to go the other way, TSA released you from probationary employment, based on an action that you made during screening.

The action in itself cannot be defended. You stated that you know it was wrong and made the choice to do it, allowing a passenger to enter, and that required
additional screening The passenger themselves confirmed this to TSA, and that you told the passenger that they needed additional screening.

As much as we disagree with a couple days left on your probationary period and the decision that was made by TSA to let you go, TSA will not reverse the decision
based on the evidence presented to them by you and the passenger.

We know it is not what you want to hear, and we are glad that you are skilled and have other opportunities available to you.

Respectfully,

Jovan Petkovic
Secretary
AFGE TSA Local 1250
602-622-7017
jovanpetkovic@mylocal1250.org
www.mylocal1250.org
*Proudly Serving Arizona and Nevada
*AFGE TSA Council 100 Communications Committee Member

Sent from my T-Mobile 5G Device

**From:** AJ Martinez <augmart2@gmail.com>
**Sent:** Wednesday, June 16, 2021, 10:48
**To:** jovanpetkovic@mylocal1250.org
**Subject:** Hello!!

Good morning Jovan, hope that you are having a good week. I really appreciate your assistance as well as the rest of union members that have tried to help in this painful process. As you know I was terminated 1 day before my trial period ended 06/09/2021. It was due to an involuntary mistake I made as a human being. However, management did not even give me the option to resign. It was a very drastic decision from management. There is no interest in going back to TSA. Fortunately, I am a very skilled and educated person who can perform other trades. However, it's very harmful in my labor background to make such unfair and unproportionate decisions. Therefore, I would be thankful to exit as a voluntary resignation instead of being terminated. We might still be on time as the exit process is not in effect yet Please inform me what results we might get. Feel free to call me.

Best Regards
[Quoted text hidden]

---

**AJ Martinez** <augmart2@gmail.com>                                                      Wed, Jun 16, 2021 at 1:45 PM
To: Jovan Petkovic <jovanpetkovic@mylocal1250.org>

Thanks for your email. I appreciate you tried.

Best regards
[Quoted text hidden]

Exhibit J: Fired officers during the trial period that are 40 years and over.

| NAME | TITLE | PAY BAND | DOB | | REASON FOR TERMINATION | DATE |
|---|---|---|---|---|---|---|
| | TSO | D | | 1995 | ATTENDANCE | 3/25/2019 |
| | TSO | D | | 1972 | OFF DUTY MISCONDUCT | 3/28/2019 |
| | TSO | D | | 1995 | FAILURE TO COMPLETE REQUIRED TRAINING AND CERTIFICATION | 3/29/2019 |
| | TSO | D | | 1977 | REFUSAL TO DRUG TEST | 4/8/2019 |
| | TSO | D | | 1982 | INAPPROPRIATE CONDUCT | 4/24/2019 |
| | TSO | D | | 1972 | OFF DUTY MISCONDUCT FELONY WARRANT | 5/20/2019 |
| | TSO | D | | 1968 | FAILURE TO CERTIFY OJT | 6/2/2019 |
| | TSO | D | | 1958 | FAILURE TO COMPLETE OJT | 7/25/2019 |
| | TSO | D | | 1998 | ATTENDANCE | 7/30/2019 |
| | TSO | D | | 1984 | FAILURE TO MEET CONDITIONS OF EMPLOYMENT - OJT | 9/12/2019 |
| | TSO | D | | 1988 | ATTENDANCE | 9/12/2019 |
| | TSO | D | | 1992 | AWOL | 12/19/2019 |
| | TSO | D | | 1969 | INAPPROPRIATE COMMENTS | 12/28/2019 |
| | TSO | D | | 1988 | FAILURE TO MAINTAIN CONDITIONS OF EMPLOYMENT | 3/10/2020 |
| | TSO | D | | 1962 | FAILURE TO MEET CONDITIONS OF EMPLOYEMENT-OJT | 7/29/20 |
| | TSO | D | | 1993 | FAILURE TO MEET CONDITIONS OF EMPLOYEMENT-OJT | 9/4/20 |
| | TSO | D | | 1999 | ATTENDANCE | 11/25/2020 |
| MARTINEZ, AUGUSTO | TSO | D | | 1980 | FAILURE TO FOLLOW SOP | 6/8/2021 |

Exhibit F-11

Exhibit K: Final action from Agency.

Office for Civil Rights and Civil Liberties
**U.S. Department of Homeland Security**
Washington, DC 20528



**Homeland Security**

)
Augusto J. Martinez,                )
)
    *Complainant*        )
)
    v.                            )    Agency Case No. HS-TSA-01561-2021
)    EEOC Hearing No. 540-2022-00039X
)
Alejandro N. Mayorkas, Secretary,   )
U.S. Department of Homeland Security,   )
)
    *Agency*               )
)

## FINAL ORDER

Pursuant to 29 C.F.R § 1614.110(a), the U.S. Department of Homeland Security (Department), Office for Civil Rights and Civil Liberties (CRCL) hereby takes final action on the above-captioned complaint by issuing a Final Order.[1]  Based upon a review of the entire evidentiary record, CRCL fully implements the Equal Employment Opportunity Commission (EEOC) Administrative Judge's (AJ) decision finding no discrimination, as the final action in this matter. Pursuant to 29 C.F.R. § 1614.110(a), a notice is attached to this Decision informing Complainant of the right to appeal to the EEOC or to file a civil action in Federal District Court.  Also, a copy of EEOC Form 573 is attached for Complainant's submission to the EEOC's Office of Federal Operations, should Complainant decide to file an appeal.

### PROCEDURAL HISTORY

1. On June 24, 2021, Complainant initiated contact with an Equal Employment Opportunity (EEO) Counselor.

---

[1] Pursuant to the Homeland Security Act of 2002, *as amended*, 6 U.S.C. § 345, the Officer for Civil Rights and Civil Liberties (CRCL) shall ensure that the protection of civil rights and civil liberties is appropriately incorporated into Departmental programs and activities.  On October 26, 2012, the Secretary for the Department issued Delegation Number 19003, which delegated to CRCL the authority to render final decisions on behalf of the Secretary in EEO complaints, pursuant to 29 C.F.R. § 1614.110, or administratively, when that regulation is not applicable.

2. On July19, 2021, the Transportation Security Administration (TSA) notified Complainant of the conclusion of EEO counseling and of Complainant's right to file a formal complaint.

3. On August 2, 2021, Complainant filed the formal complaint at issue.

4. On November 12, 2021, TSA forwarded Complainant a copy of the Investigative File, providing Complainant notice of Complainant's right to request a hearing before an EEOC AJ or, alternatively, to receive a Final Agency Decision.

5. On November 15, 2021, Complainant filed a request for a hearing before an EEOC AJ.

6. On December 6, 2022, an AJ from the EEOC's Phoenix District Office issued a decision on the complaint without a hearing, pursuant to 29 C.F.R. § 1614.109(g). The AJ concluded Complainant failed to prove he was discriminated against as alleged.

7. On December 6, 2022, CRCL received the AJ's decision.

## CLAIMS AT ISSUE[2]

Whether the TSA discriminated against Complainant and subjected him to a hostile work environment based on race (mixed), color (brown), national origin (Columbian), and age (YOB: 1980) when:

1. On March 1, 2021, a management official removed Complainant from a briefing.

2. On June 8, 2021, management terminated Complainant from Federal service during his probationary period.

## ANALYSIS

Upon a complete review of the entire evidentiary record, this Office fully implements the AJ's decision.

---

[2] At the initial scheduling conference, Complainant amended, without Agency opposition, the bases of his complaint to include race and color.

**CONCLUSION**

Based upon the full evidentiary record, CRCL fully implements the AJ's decision.  Since Complainant is not the prevailing party, he is not entitled to payment of attorney's fees, costs, or compensatory damages, and no corrective action is required.


*Amelia Demopulos*                          December 19, 2022
For Veronica Venture                        Date
Deputy Officer, Office for Civil Rights and Civil Liberties
Director for EEO & Diversity
Department of Homeland Security

KDL

3

Exhibit P. Covid Test.



Laboratorio
**Lorena Vejarano** S.A.S.



10118556

**SEDE CARTAGENA DIAGONAL 31 # 54-71**
**TELEFONOS: 0328353815 CEL: 3187129168 - 3012945699**
WWW.LORENAVEJARANO.COM

| | | | |
|---|---|---|---|
| **Nombre** | : AUGUSTO JOSE MARTINEZ CABALLERO | **Referencia** | : 10118556 |
| **Documento** | : 9145973 | **Edad/Sexo** | : 40  /  M |
| **Doctor** | : .. | **Fecha de Ingreso** | : 2021-02-24 08:17:13 |
| **Empresa** | : PROMOCION VIAJERO | **Fecha de Toma** | : 2021-02-24 08:17:13 |
| **Dirección** | : CENTRO SANDIEGO SERREZUELA APTO 107 | **Fecha Impresión** | : 2021-11-08 15:38:37. |
| **Telefono** | : .. | | |

| ANALISIS | RESULTADO | UNIDADES | VALORES DE REFERENCIA |
|---|---|---|---|

## Biología Molecular

RT PCR para SARS Cov 2 (COVID 19) en muestra respiratoria

**Resultado:**                                    **NEGATIVO**
**Tipo de muestra:**                              **Hisopado nasofaringeo**

**Técnica : Detección diagnóstica de coronavirus Wuhan 2019**
**por RT- PCR en tiempo real.**
**Limite de detección : 10 copias /reacción: Genes N y ORF1ab**

**INTERPRETACION DE RESULTADOS**
**POSITIVO: Se detecto material genético de SARS-Cov-2**
**en la muestra analizada.**
**NEGATIVO : No se detectó material genético**
**para SARS-Cov-2 en la muestra analizada.**

**Registro Invima: 2020RD-0006105.**

**Nota: Los resultados negativos no excluyen la infeccion por**
**SARS-Cov-2 y no deben usarse como la unica base**
**para el manejo del paciente; deben combinarse**
**con observaciones clínicas, antecedentes del paciente e**
**información epidemiológica.**
Fecha/Hora Validación:   24/02/2021   17:38:20
Tipo de Muestra:   NA

**LISSETTE LOPEZ RODRIGUEZ**
**BACTERIOLOGA T.P.4503**

"La interpretación de éste y todo examen de laboratorio corresponde exclusivamente al médico"

Sr./Sra.  AUGUSTO JOSE MARTINEZ CABALLERO              2021-02-24 08:17:13              Página 1 de 1

Para verificar este documento, escanee el código QR o ingrese a la siguiente URL, desde donde
deberá ingresar el documento de identidad y este código: 10118556



**URL :**  https://bit.ly/2ZSIarW

Exhibit F-13

Exhibit Q. Texts messages regarding opinion of other co-workers about Zachary Couto.

Exhibit Q. Texts messages regarding opinion of other co-workers about Zachary Couto.



Pain n suffering too

I could have asked for more but just asking 6 months of back pay

OCT 6, 2021 AT 5:04 PM

Well good for you, I hope y win, do you have enough evidence.  I dunno how it all worjs

OCT 6, 2021 AT 5:22 PM

Damages my firing its my evidence

True, without shit happening to him either

Errrrrr that irked me

Im studying for Paralegal

Of there was no firing there is no damages

OCT 6, 2021 AT 7:26 PM

Got it, wow

Well good

I hope it works out

Hi lawyers are not cheap

Nope, not at all

enjoying your hometown. I am no longer with TSA over an incident with Zac Couto at TDC that got escalated by sup John Hoffart. I was sick of that job, Zach is a dangerous and mean person. And nobody trust in him because of what he did to me. He transferred to B as coworkers displayed apathy towards him.

It was nice working with you.

AUG 25, 2021 AT 9:11 PM

Omg i can't believe it!!! Ugh I hate Zac he's disgusting and a pervert. I can't believe he did that to you. What are you doing now? How are you doing after all of what happened? I hate TSA also.

Im working independently. Im doing fine. Wprking in new entrepreneurial projects. I felt a relieve when I got fired but felt depressed two weeks after and was binge drinking. Thanks I have my mom, kids and projects that helped me to be busy and close the chapter

AUG 25, 2021 AT 9:42 PM

I made a mistake at TDC  with a document check and he noticed it instead of helping me or stop the passenger, he waited passenger walked through scanner cross checkpoint and eventually get to