**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Augusto J Martinez, | No. CV-23-00429-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Alejandro Mayorkas, | |
| Defendant. | |

Plaintiff Augusto J. Martinez brought this action for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act. ("ADEA"). Pending before the Court is Defendant Secretary of Homeland Security Alejandro Mayorkas's Motion for Summary Judgment (Doc. 58). For the following reasons, Defendant's Motion will be granted.

**I.   BACKGROUND**

Following the September 11, 2001 terrorist attacks on Americans, Congress created the Transportation Security Agency ("TSA"). (Doc. 1 ¶ 10.) The primary purpose of the TSA is to ensure the safety and protection of the travelling public—in part by preventing unscreened passengers from entering the secure portion of the airport terminal, known as the sterile area. (Doc. 58-1 at 9–11.) As such, TSA officers are bound to follow TSA policies. (*Id.* at 9.) One such policy is a requirement that individuals without proper identification must undergo additional screening requirements before being permitted into the sterile area. (Doc. 58-2 at 3.)

1   On June 6, 2021, Plaintiff was working one of the TSA screening areas at Phoenix Sky Harbor Airport, when a passenger approached him. (Doc. 1 ¶ 7.) The passenger had a photocopy of her ID and a debit card for identification. (Doc. 58-1 at 16.) Because by TSA standards this does not meet proper identification requirements, the passenger was supposed to receive additional screening in compliance with TSA protocol. (*Id.* at 13; Doc. 58-2 at 31.) Instead of additional screening though, Plaintiff allowed the passenger to proceed through standard screening, and was overheard telling the passenger "I am going to let you through this time but next time I will not." (Doc. 58-2 at 31.) When another TSA officer ("Comparator 1") noticed and overheard this, he notified his supervisor ("Supervisor") who reviewed the security footage and determined that proper screening was not conducted. (*Id.* at 36, 39) Supervisor then confronted Plaintiff who responded, "I have a lot of stuff on my mind, I am not sure why I did what I did." (*Id.* at 39.) When Supervisor brought the passenger back for proper screening, the passenger stated that Plaintiff had told her that Plaintiff "was not supposed to let [her] in but he would this one time." (*Id.*)

After an internal investigation, Plaintiff's employment was terminated with the agency. (*Id.* at 31–32.) The letter of dismissal specifically notes Plaintiff's knowledge that additional screening was required and his disregarding it as the only rationale for dismissal. (*Id.*) Plaintiff conceded several points at his deposition: that the primary purpose of the TSA is to protect the travelling public (Doc. 58-1 at 9–11); that he had a duty to ensure the passenger received additional screening (*Id.* at 13); that his failure to do so was a "mistake" (*Id.* at 14, 16–17); that the policy he violated was in relation to the primary objective of the TSA (*Id.* at 6, 10); and that termination for lack of trust or integrity or violating standard procedures are all legitimate reasons for termination. (*Id.* at 20–23.)

Nonetheless, almost two years later Plaintiff brought this cause of action alleging violations of Title VII and the ADEA. (Doc. 1) After discovery concluded, Defendant filed a Motion for Summary Judgment and Plaintiff filed a response brief. (Docs. 58, 62.) Because the Court finds this briefing sufficient to resolve the motion, a reply brief is not

necessary.[1]

## II. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins.*, *Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law, and that the issue is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to "weigh the evidence and determine the truth" but to "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

---

[1] After reviewing the parties' briefs, the Court observes the potential frivolous nature of Plaintiffs' case.

- 3 -

## III. ANALYSIS

Employment discrimination claims under Title VII and ADEA are analyzed using the *McDonnell Douglas Corp. v. Green* burden-shifting analysis. *See* 411 U.S. 792 (1973); *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015) (applying the *McDonnell Douglas* framework to an ADEA claim). This begins with the requirement that plaintiff establish a prima facie case of discriminatory conduct. *Hittle v. City of Stockton*, 101 F.4th 1000, 1011 (9th Cir. 2024). A plaintiff who is already employed meets this burden by establishing: (1) he belongs to a protected class; (2) he was performing to the employer's legitimate expectations; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).

While the plaintiff has the burden of establishing a prima facie case by a preponderance of the evidence at trial, *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981), at the summary judgment stage, the "requisite degree of proof necessary . . . is minimal and does not even need to rise to [that] level." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quotations and citation omitted). However, the plaintiff is still required to "set forth specific facts showing that there is a genuine issue for trial." *Foster v. Arcata Assoc.*, 772 F.2d 1453, 1459–60 (9th Cir. 1985) (overruled on other grounds). Alternatively, a plaintiff can establish a prima facie case without the *McDonnell Douglas* factors and instead with direct or circumstantial evidence "demonstrating that a discriminatory reason more likely than not motivated" the employer. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

In either instance of the plaintiff establishing a prima facie case, the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the challenged actions." *Hittle*, 101 F.4th at 1012 (quotations and citation omitted). Then, if the employer establishes a legitimate rationale, the burden shifts back to the plaintiff "who

must show that the proffered nondiscriminatory reason is pretextual." *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1228 (9th Cir. 2021).

At the outset, Plaintiff concedes in his response, at his deposition, and in interrogatories that he is unable to establish direct evidence or any comparator employees for purposes of *McDonnell Douglas*. (Doc. 62 at 9, 15; Doc. 58-1 at 18, Doc. 58-3 at 10, 12–14.) To the extent that the Complaint and interrogatory responses identify Comparator I as a comparator employee, (Doc. 1 ¶¶ 25–29; Doc. 58-3 at 12–13), the Plaintiff seems to abandon that argument in his response. However, even if he persisted in asserting that Comparator I was a similarly situated employee, this would fail.[2] "Generally, 'individuals are similarly situated when they have similar jobs and display similar conduct.'" *Ballou v. McElvain*, 29 F.4th 413, 423 (9th Cir. 2022) (quoting *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)). Where, as here, one employee does not "engage in problematic conduct of comparable seriousness" to another, the employees cannot be considered similarly situated. *Vasquez*, 343 F.3d at 641–42.

Plaintiff contends that Comparator I intentionally delayed the reporting of Plaintiff letting the passenger through. (Doc. 62 at 6–7.) Yet, Plaintiff cites to no evidence to establish that Comparator I intentionally delayed the reporting. The record, rather, supports that Comparator I was busy with other passengers and reported it after completing his screening requirements. (Doc. 58-2 at 25, 36.) Without any evidence that Comparator I intentionally or deliberately delayed the reporting, the Court cannot find the conduct of the two to be similar enough to deem Comparator I a comparator employee.

Moreso, there is no question that Plaintiff's actions fall well below the level of performance to meet the TSA's legitimate expectations. The TSA has a "critical . . . role in securing the safety of the traveling public" and Plaintiff admitted during deposition that role is the Agency's primary purpose. *Stephens v. Wolf*, No. CV 18-10304 PA (DFMx), 2020 WL 2039947 at *3 (C.D. Cal, 2020). (Doc. 58-1 at 6, 10.) Knowingly letting a

---

[2] Whether there are similarly situated employees who have not been punished "may be relevant to both the first and third steps of the *McDonnell Douglas* framework." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010). The Court chooses to address Plaintiff's arguments regarding Comparator I here.

passenger into the sterile area without the requisite enhanced screening is a significant security risk that could compromise the safety of other passengers or the entire airport. And when asked why Plaintiff knowingly let a passenger into the sterile area without the requisite enhanced screening, he responded that he "ha[d] a lot of stuff on his mind" and he was "not sure why [he] did what [he] did." (Doc. 58-2 at 32, 39.) Because of this, Plaintiff is unable to establish a prima facie case through the *McDonnell Douglas* factors.

Plaintiff makes several additional arguments relating to two additional incidents with supervisors, a violation of due process procedures, and what he argues amounts to statistical evidence of discriminatory animus towards non-white and older workers. (Doc. 62 at 12–13.) There is a lack of clarity as to whether Plaintiff makes these arguments to establish a prima facie case, to establish the TSA's rationale was pretextual, or both.

Courts may assume a prima facie case exists and then determine whether a Title VII claim fails at stage two or three of the *McDonnell Douglas* framework. *See, e.g.*, *Opara v. Yellen*, 57 F.4th 709, 728 (9th Cir. 2023); *Villiarimo*, 281 F.3d at 1062–63 (recognizing a lack of certainty as to whether the plaintiff established a prima facie case, and determining the claim fails instead at the pretext stage). For clarity, the Court chooses to assume a prima facie case exists to address Plaintiff's three arguments.

Notably, Plaintiff admitted at his deposition that the TSA would have legitimate grounds to terminate an employee for failure to follow standard operating procedures and subjectively believed the individual was a risk. (Doc. 58-1 at 20–23.) Thus, the only question that remains is whether Plaintiff's arguments establish that the TSA's rationale was pretext for termination. The Court addresses each of Plaintiff's above arguments in turn.

Firstly, Plaintiff argues that two other incidents with supervisors show a discriminatory animus. The first incident involved a manager who shouted at Plaintiff to stand to show respect while working the checkpoint. (Doc. 62-1 at 32.) The second incident Plaintiff argues is when Supervisor pulled him out of a briefing upon Plaintiff's return from Columbia. (*Id.* at 58–59.) Regarding the second incident, Plaintiff was removed from a

briefing for thirty to forty minutes before returning to work. (Doc. 58-1 at 26–27.) The record supports that Plaintiff was pulled from the briefing to determine if he had to be quarantined before returning to work given COVID protocols in place at the time. (Doc. 58-2 at 2–3, 20.) Plaintiff contends that because Supervisor did not request a COVID test result, that Plaintiff was pulled instead because he is Columbian. (*Id.* at 5.) Yet, Plaintiff never reported the incident for alleged harassment. (Doc. 62-1 at 60.) Regarding both incidents, neither resulted in any adverse employment action for the Plaintiff. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (defining adverse employment action as an action where an employee suffers a tangible and detrimental employment action). Plaintiff concedes that neither event resulted in a demotion, pay cut, suspension or termination. (Doc. 58-1 at 28–31.) Even if there is a factual dispute as to whether Supervisor requested a COVID test, (Doc. 58-2 at 2–3, 5), it is not sufficient to create a genuine issue of material fact.

Secondly, Plaintiff argues, for the first time in his response brief, that the TSA violated Plaintiff's rights to procedural due process by treating him as a trial period employee instead of a full employee.[3] (Doc. 62 at 4–5.) Specifically, Plaintiff argues that "[i]f the Defendant took adverse actions, such as suspension, termination, or removal of duties, after the Plaintiff's probationary period ended on June 8, 2021, those actions must have complied with the procedural protections set forth for permanent employees." (Doc. 62 at 6.) The Court need not determine if this analysis is correct as the record demonstrates that it is inapt. The termination letter sent to—and signed by—Plaintiff shows that the termination occurred *on* June 8 and not *after* as Plaintiff now argues. (Doc. 58-2 at 31–33.) The effective date noted on the Notification of Personnel Action, (Doc. 62-2 at 4), does not change the date of the decision.

Lastly, Plaintiff contends that "statistical evidence" supports "that the agency profiles people of different ethnicities and colors" and discriminates based on age. (Doc. 62 at 8, 13.) It is certainly true that statistical evidence can be sufficient to constitute "prima

---

[3] Up until, and even during Plaintiff's deposition, the record supports that Plaintiff believed he was a trial period employee. (Doc. 58-1 at 3, 20–21; Doc. 58-3 at 3, 14.)

facie proof of a pattern or practice of discrimination." *Hazelwood Sch. Dist., v. United States*, 433 U.S. 299, 307–08 (1977). But here, Plaintiff's two documents do not constitute anywhere close to the level of statistical evidence used in *Hazelwood*. Instead, Plaintiff attaches two one-page documents, one for race and one for age, each with around twenty listed individuals. Notably, the first document, (Doc. 62-3 at 2), provides only a list of years and descriptions of race; the record contains no evidence to authenticate that the list is a list of terminated employees and, even if it is, there is no evidence that the list is confined to a relevant date range. As for the second document, (Doc. 62-3 at 3), which supposedly demonstrates age discrimination, it too fails to establish what Plaintiff believes it does. It contains seventeen terminated employees not including Plaintiff. Of the seventeen, ten were terminated under the age of 40—six of the ten being under the age of 30. Furthermore, every "reason for termination" listed appears, facially, to be legitimate grounds for termination. Neither list establishes discrimination, let alone "gross statistical disparities." *Hazelwood Sch. Dist.*, 433 U.S. at 307–08.

The three arguments Plaintiff provides attempting to demonstrate pretext are not sufficient to overcome Plaintiff's concession that terminating an employee for failure to follow standard protocols is legitimate. At bottom, Plaintiff failed to follow the primary objective of the TSA, (Doc. 58-1 at 6, 9–11), and was terminated as a result.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Defendants Motion for Summary Judgment (Doc. 58).

**IT IS FURTHER ORDERED** that The Clerk of the Court shall enter judgment for Defendant and close the case.

Dated this 25th day of October, 2024.

Michael T. Liburdi
United States District Judge